**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The State of Arizona ex rel. Terry Goddard, the Attorney General, and the Civil Rights Division of the Arizona Department of Law,<br><br>Plaintiffs,<br><br>and Shelly Reyes, a single woman,<br><br>Intervenor-Plaintiff,<br><br>vs.<br><br>Frito-Lay, Inc., a Delaware Corporation and Frito-Lay North America, Inc., a Delaware Corporation,<br><br>Defendants. | No. 10-cv-1450-PHX-GMS<br><br>**ORDER** |

Pending before this Court are Plaintiff State of Arizona's (1) Motion for Protective Order (Doc. 33); (2) Motion for Protective Order Re: Deposition of Four Current and Former ACRD Attorneys (Doc. 46); (3) Motion For Protective Order Re: Deposition of ACRD Investigator (Doc. 47); and (4) Request for Leave to File Written Reply to Defendants' Responses DKT. Nos. 56 & 57 and Notice of Supplemental Authority (Doc. 71). For the reasons stated below, each of those motions is denied.

**BACKGROUND**

This discovery dispute arises in a case in which Arizona Civil Rights Division ("ACRD") brought suit against Defendants Frito-Lay. The ACRD brought suit after investigating the complaints of discrimination brought by the Intervenor Shelly Reyes

1 ("Reyes") and after concluding that there was reasonable cause to believe that the Defendants
2 engaged in unlawful employment practices with respect to Reyes.

3       According to the ACRD, the initial draft of a reasonable cause determination is
4 prepared by the non-attorney compliance officer who investigates the discrimination charge.
5 In this case the assigned compliance officer was Ashyea Thompson ("Thompson"). The
6 draft is then reviewed and revised by at least one ACRD attorney "to verify the draft's factual
7 accuracy and legal sufficiency and to make necessary revisions." (Doc. 45, Ex. A). Finally,
8 "Division Chief Counsel reviews and approves all reasonable cause determinations issued
9 by the Division" prior to issuing the reasonable cause determination. (*Id.*)

10       In this case, on August 5, 2008, prior to filing her formal complaint with the ACRD,
11 Reyes had her initial intake interview with an ACRD compliance officer. (Doc. 33 at 7).
12 The compliance officer prepared a form that contained several possible priorities for
13 processing the charge. (PRIV00023). On August 18, 2008, Reyes filed her charge with the
14 ACRD. The matter was assigned to Thompson, who is not an attorney. On September 17,
15 2008, Thompson filled out a request for attorney assistance in investigating the
16 discrimination charge. (PRIV00024). In response, Thompson received a two-page memo,
17 dated October 3, 2008, from Assistant Attorney General Sandra Kane. Two separate copies
18 of this memorandum are in the ACRD's files. (PRIV00021-22, PRIV00025-26). Thompson
19 made separate notes to herself for purposes of conducting her investigation. (PRIV00020).

20       Apparently, Thompson's initial draft was revised by Melanie Pate ("Pate"), an
21 attorney who was Chief Counsel of the ACRD, and who was also acting at times in the role
22 of the ACRD Compliance Section's Chief Counsel. Pate then referred the document to
23 Assistant Attorney General Ann Hobart ("Hobart") and requested her assistance for further
24 revision and review (PRIV00015). (Doc. 33 at 5). While working on her revision to the
25 reasonable cause determination, Hobart made handwritten notes based on her review of the
26 investigation file and her revisions to the determination. (PRIV00013-14, PRIV00016,
27 PRIV00017-19). The State has in its files an unsigned draft of the reasonable cause
28 determination that contains some of Pate's and Hobart's revisions to Thompson's draft.

- 2 -

(PRIV00009-12). In response to interrogatories, the ACRD indicated that Mike Walker and Diana L. Varela, ACRD employees who are also attorneys, were also involved "to some extent in reaching the ACRD's determination and/or in drafting" the reasonable cause determination. (Doc. 46, Ex. C).

On July 30, 2009, Pate, acting as the ACRD Division Chief Counsel, and, as ACRD further acknowledges, in her role as an attorney, signed and issued the final reasonable cause determination. On that date, the ACRD transferred the matter from its compliance section to its litigation division for conciliation or possible litigation. That transfer was reflected in the compliance division's Closing File form (PRIV00002) and Request For Assistance form (PRIV00003).

This litigation ensued. In its complaint the ACRD alleges on its own behalf and on behalf of Reyes that she was subjected to a hostile work environment and discriminated against on the basis of her sex and race in violation of the Arizona Civil Rights Act, A.R.S.§ 41-1401. These claims were based uniquely on state law. Thereafter, Reyes intervened in the case as a Plaintiff and further asserted hostile work environment and sex and race discrimination claims under federal law, Title VII, 42 U.S.C. § 2000e *et seq*. The federal and pendent state claims were then removed to this Court by Frito-Lay.

Both the ACRD and Plaintiff-Intervenor Reyes have reserved the right to introduce into evidence the reasonable cause determination made by the ACRD. The ACRD reserves the right to introduce the document only to establish the jurisdictional prerequisites for bringing suit. Plaintiff-Intervenor Reyes, however, reserves the right to introduce the reasonable cause determination without limitation, presumably including its probative value in establishing the Plaintiffs' burden of proof on the underlying issues of discrimination.

In discovery in this action, the ACRD declines to permit the deposition of either its investigator, Thompson, or any of its attorneys who had a role in drafting the reasonable cause determination – Melanie Pate, Ann Hobart, Diana L. Varela and Mike Walker. It asserts that such depositions are irrelevant and precluded by both the deliberative process privilege and the attorney-client privilege. It has further withheld from production the

documents identified above as being subject either to the attorney-client privilege or attorney work product immunity.

## DISCUSSION

**I.    Discovery Concerning Adequacy of Reasonable Cause Determination**

When a charge of discrimination is filed with the ACRD, it is the ACRD's obligation to investigate it. "If the [ACRD] determines after such investigation that there is not reasonable cause to believe that the charge is true," it enters an order to that effect and dismisses the charge which gives the complainant the right to independently bring suit. A.R.S. § 41-1481(B). On the other hand, "[i]f the [ACRD] determines after such investigation that there is reasonable cause to believe that the charge is true, it shall enter an order containing its findings of fact." *Id*. Thereafter, the statute requires the ACRD to "endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation and persuasion." *Id*. If the ACRD is unsuccessful in eliminating the allegedly unlawful employment practice through conciliation within thirty days of a reasonable cause determination, then the statute authorizes the ACRD to pursue a civil action to resolve the matter. A.R.S. § 41-1481(D).

The Arizona civil rights statutes, including A.R.S. § 41-1481, are the state equivalent of Title VII under the federal law. As is the case under Title VII, nothing in the state statute authorizes an ACRD reasonable cause determination to be admitted in a judicial proceeding. Nevertheless, as is the case in most federal courts with respect to EEOC reasonable cause determinations, Arizona courts apparently determine on a case-by-case basis whether the ACRD's administrative reasonable cause determination should be admissible in the trial of a discrimination claim. *See Shotwell v. Donahoe,* 207 Ariz. 287, 291, 85 P.3d 1045, 1049 (2004) (surveying cases and holding that state procedural rules apply to determine whether EEOC reasonable cause determinations are admissible in state court and refusing to adopt a per se rule of admissibility).

In the Ninth Circuit, however, a "plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or

- 4 -

whether the case is tried before a judge or jury." *Plummer v. Western Int'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981). That right is not limited solely to EEOC findings of probable cause, but has also been extended to reasonable cause determinations made by state administrative agencies similar to the ACRD. *See Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (extending *Plummer* to permit admissibility of preliminary investigative findings of Nevada Equal Rights Commission).

As *Plummer* explicitly states, however, when a reasonable cause determination is admitted into evidence, a defendant is "free to present evidence refuting the findings of the EEOC and may point out deficiencies in the EEOC determination." 656 F.2d at 505 n.9. Such a conclusion only makes sense. Introducing the reasonable cause determination itself puts its validity at issue, and not merely the validity of the facts on which it is based. Thus, the accuracy, adequacy and reasonableness of the investigation on which the determination is based, as well as the reasonableness of the evaluation of the investigation and the resulting conclusions leading to the determination are all relevant topics of inquiry. Defendants must then be allowed to conduct discovery to obtain "evidence refuting the findings" of the ACRD and to "point out deficiencies" in its determination.

In its Motion for Protective Order the ACRD cites a Sixth Circuit case, *EEOC v. KECO Indus. Inc.,* 748 F.2d 1097, 1100 (6th Cir. 1984), for the proposition that the adequacy of the ACRD's reasonable cause determination is not relevant. Nevertheless, *KECO* is readily distinguishable. *KECO* did not involve a case in which the EEOC attempted to introduce its reasonable cause determination for purposes of establishing KECO's liability. When the reasonable cause determination is not at issue, discovery into its adequacy is not relevant in most cases. In light of *Plummer* and *Heyne*, however, and the fact that in this case Plaintiffs reserve the right to place before the jury the conclusions contained in the reasonable cause determination, the adequacy of ACRD's reasonable cause determination is a relevant question on which discovery is appropriate.

/ / /

- 5 -

## II. Deliberative Process Privilege

The ACRD bases its motion for a protective order preventing Thompson's deposition on the deliberative process privilege, and to a lesser extent on the attorney-client privilege. Significantly, Arizona Courts have declined to recognize a deliberative process privilege in the state common law. *Rigel Corp. v. Arizona,* 225 Ariz. 65, 234 P.3d 633 (Ct. App. 2010) (holding that there is no statutory deliberative process privilege in Arizona, and declining to create such a privilege under the common law). Therefore, in the absence of a statutory privilege, the ACRD has no protection for its deliberative processes in state court proceedings.

Nevertheless, a qualified deliberative process privilege exists in federal court. To the extent that privilege might apply to this case, it would allow the ACRD to withhold documents or testimony that reflect pre-decisional advisory opinions, recommendations, or deliberations by which it made the reasonable cause determination in this case. *See Federal Trade Comm'n v. Warner Commc'ns, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (citations omitted). Nevertheless, the deliberative process privilege is a qualified one. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* Among the factors to be considered in making the determination of whether the deliberative process privilege applies to prevent inquiry into an agency's deliberative processes are: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

### A. Relevance

As *Plummer* makes clear, to the extent that the reasonable cause determination is admitted into evidence and may be used for its probative value in establishing the Plaintiffs' burden of proof, the accuracy of its findings, and its potential deficiencies are relevant.

This Court is aware of at least three other orders in this Circuit that adopt the view that discovery is either not relevant, or at least should be limited by the deliberative process

privilege, even when the Plaintiff agency's determination of probable cause is per se admissible. The first two, *Equal Employment Opportunity Commission v. Pinal County,* 714 F.Supp.2d 1073 (S.D.Cal. 2010), *Equal Employment Opportunity Commission v. Gold River Operating Corp.*, No. 2:04-cv-01349-LRL, 2007 WL 983853 (D. Nev. March 30, 2007), both rely on *KECO,* 748 F.2d at 1100, for the proposition that the adequacy of plaintiff's reasonable cause determination is not relevant in a Title VII case. *See also Equal Employment Opportunity Comm'n v. NCL America, Inc.,* 536 F.Supp.2d 1216, 1221–22 (D. Hawai'i 2008) (also relying on *KECO* to suggest, in a different context, that discovery into the adequacy of a probable cause determination is not relevant).

As has already been discussed above, however, *KECO* did not involve a case in which a reasonable cause determination was admitted at trial for its probative value in establishing the liability of the defendant. None of the above cases acknowledge that fundamental distinction, nor do they discuss why a plaintiff should be allowed to introduce its own reasonable cause determination as probative of the defendant's liability without allowing the defendant to conduct discovery on the adequacy of the investigation that results in that conclusion. Thus, this Court does not view any of the above cases as persuasive authority for the proposition that the adequacy of the agency's reasonable cause determination is irrelevant in cases in which that determination is sought to be admitted for purposes of establishing a defendant's liability.

In the third case, brought to this Court's attention by the ACRD in its Request for Leave to File Replies and Notice of Supplemental Authority (Doc. 71), another division in this District, in an unpublished order, limited the scope of a deposition of an ACRD investigator due to the deliberative process privilege. *State of Arizona ex rel. Terry Goddard, et al. v. Dupnik et al.,* No. CV 09-0015-TUC-HCE (D. Ariz. January 26, 2010).[1] In *Dupnik's*

---

[1] Defendants oppose the ACRD's Request for Leave to File Replies and Supplemental Authority (Doc. 71), and their opposition is well-founded. While the ACRD was permitted to file a reply in support of its first motion for protective order, the Court made it clear in establishing the briefing schedule pertaining to the ACRD's second and third motions for protective order that it would not permit replies to be filed. (Doc. 43). Further,

- 7 -

analysis of the four *Warner Communications* factors to determine whether the privilege applied, however, *Dupnik* never considers *Plummer's* directive that once the reasonable cause determination is placed into evidence the defendant has the right to attack the accuracy and the deficiencies of the reasonable cause determination itself – not just the accuracy of the factual information contained within it. *Dupnik* thus assumes in its analysis that the adequacy of the determination is not a relevant topic for discovery. The failure to consider the relevance of discovery relating to the validity of the reasonable cause determination itself, and the adequacy and/or flaws of the underlying investigation, causes this Court to part company with *Dupnik*. Information concerning the adequacy of the ACRD's investigation and the validity of its deliberative conclusions is indeed relevant when the reasonable cause determination itself is admitted in evidence.

## B. Availability of Other Evidence

Defendants were, as the statute anticipates, provided with the ACRD's reasonable cause determination. They have also been provided with tape-recordings of the ACRD interviews conducted during the investigation, and presumably the other "evidence collected by or submitted to the division during the investigation of the charge and the source of the evidence." A.R.S. § 41-1481 (B). At some point, however, ACRD employees evaluated the extent of the relevant information that should have been sought, was actually sought, and was obtained in the investigation. They then determined whether the information actually

---

after the permitted briefing, the Court set oral argument on this discovery dispute and provided advance notice to the parties of the issues in which it had particular interest. (Doc. 66). At oral argument, the Court again indicated to both Plaintiffs and Defendants that it would not accept additional briefing on these issues. It would now be inequitable to permit the Plaintiffs to file a joint reply after the parties have participated in oral argument, and in contravention of the Court's previous orders. Nevertheless, to the extent that the ACRD's true intent in filing its motion for leave was to advance additional arguments on the merits, (the court notes that the text of the motion for leave exceeds the original page limit set for the second and third motions for protective order and, in addition, the Plaintiff has attached a twenty page appendix), the Court has become aware of Plaintiffs' reliance on *Dupnik*. Because the Court finds *Dupnik* unpersuasive it sets forth the reasons why. It nevertheless, otherwise denies the ACRD's Motion for Leave. (Doc. 71).

obtained justified the conclusion that there was reasonable cause to believe that the Defendants violated the Arizona civil rights statutes. As Pate's affidavit indicates, someone other than the original drafter(s) of the reasonable cause determination reviews it "to verify the draft's factual accuracy and legal sufficiency and to make necessary revisions." (Doc. 45, Ex. A). Further, according to Pate's affidavit, Division Chief Counsel also "reviews and approves all reasonable cause determinations issued by the Division" prior to its issuance. (*Id.*).

It is the deliberative conclusion of this state investigative agency that is the principal advantage to Plaintiffs of having the decision entered in evidence. And it is impossible to evaluate the accuracy and the inadequacies of that deliberative conclusion without inquiring into the evaluative process, any disclosed or undisclosed reasons for the decision, and inquiry into the information that was actually sought, and that should have been sought. The Defendants have no reasonable substitute for obtaining that information other than inquiring into the deliberative process.

### C. The Government's Role In the Litigation

The ACRD is the lead Plaintiff in this litigation. Thus, the very party that made the reasonable cause determination now desires to prevent discovery into the adequacy of the investigational process, even though the reasonable cause determination is admissible at trial. Although it is principally the intervening Plaintiff who reserves the right to admit the determination for purposes of establishing Plaintiffs' burden of proof, this does not change Defendants' need or right to evaluate the adequacy of ACRD's determination to refute it at trial. If the determination is to be admitted, Defendants are entitled to question, and conduct discovery, concerning its adequacy.

### D. Hindrance to Frank Discussion In Policy Formulation

Even admitting the possibility that disclosure would hinder frank and independent discussion regarding the contemplated policies and decisions of the ACRD, the decision at issue in this case does not directly involve the creation of any fundamental policy. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) (defining

- 9 -

deliberative as actually related to the process by which governmental decisions and policies are formulated). The deliberations only relate to the ACRD's investigation and determination of Reyes' charge against Frito-Lay. To the extent that disclosure of the deliberative process involved in this limited decision may illustrate how broader policies and procedures of the ACRD are applied in individual cases, disclosure would have the beneficial effect of holding Plaintiffs accountable for the application of their policies and their decisions. Such disclosure is especially warranted when Plaintiffs seek to establish the Defendants' liability through the end result of the agency's own deliberations.

At any rate, even assuming that disclosure of the deliberative process in making this decision would negatively impact the ACRD in its policy creation and that there would be no benefit to disclosing the deliberations of the ACRD in this case, this factor is outweighed by the other three factors that all favor Defendants' assertion that the qualified privilege does not apply. The ACRD's motion for protective order to prevent the deposition of Thompson based on the applicability of the deliberative process privilege is, therefore, denied.

### III.     Attorney-Client Privilege

Despite the inapplicability of the deliberative process privilege, government agencies are entitled to seek the confidential advice of counsel. *See Coastal Estates Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). Nevertheless, in doing so they must comply with the prerequisites of the privilege if they wish it to apply. The prerequisites necessary to the creation of the attorney-client privilege are: (1) legal advice must be sought, (2) from a professional legal advisor in his or her legal capacity, (3) the communications must relate to that legal advice, (4) they must be made in confidence, (5) by the client or the attorney, (6) the privilege is asserted by the client, (7) from disclosure by the client or the attorney, and (8) the protection must not be waived. *United States v. Graf,* 610 F.3d 1148, 1156 (9th Cir. 2010); *see also Upjohn Co. v. United States*, 449 U.S. 383, 392–93 (1981) ("Confidential communications from the attorney back to the client, in the form of advice, are also protected."). "The party asserting the [attorney-client] privilege bears the burden of proving each essential element." *United States v. Ruehle,* 583 F.3d 600, 608 (9th Cir. 2009).

In this case, there is, of course, no privilege in the reasonable cause determination itself. The determination was provided to the Defendants and is otherwise publicly available. It was not, therefore, a communication made in confidence.

There is no dispute between the parties as to whether the document contains a legal conclusion or conclusions. As the ACRD itself puts it, "the 'business' of the ACRD is legal work exclusively. The ACRD has no function other than to enforce Arizona civil rights laws–a function that encompasses pre- and post-litigation legal activity and that non-attorney Compliance Officers can help fulfill only with attorney guidance." (Doc. 45 at 3). In furtherance of its pursuit of the maximum privilege available, the ACRD not only concedes, it affirmatively asserts, that the reasonable cause determination contains legal conclusions. The Court need not decide whether it agrees with the ACRD's assertion of whether all of its operations are covered by the attorney-client privilege to accept the ACRD's position that the reasonable cause determination contains legal conclusions. Certainly, the determination has legal effects.

However, the document does not simply contain the ACRD's legal conclusion that there was reasonable cause to believe that discrimination had occurred. Rather, as the ACRD asserts, the document was signed and prepared by an ACRD lawyer in her capacity as such.[2] Further, the document itself identifies Pate as Chief Counsel. The ACRD thus asserts, based on the attorney-client privilege, that Pate is not subject to being deposed concerning its creation because she was acting in her role as an attorney in doing so. The ACRD also asserts that none of the other three lawyers who played a role in the investigation of the charges, or the preparation of the reasonable cause determination, are subject to deposition.

In having its attorney sign the reasonable cause determination in her capacity as a lawyer, therefore, the ACRD created a public document containing its attorney's legal conclusion that is per se admissible at trial for the purpose of meeting Plaintiffs' burden of proof. As Pate herself acknowledges, "Division Chief Counsel reviews and approves all

---

[2] By contrast, the parties conceded at oral argument that it is not the general practice of the EEOC to have its reasonable cause determinations signed by counsel.

- 11 -

reasonable cause determinations issued by the Division" prior to signing the document. (Doc. 45, Ex. A). It is black letter law that the ACRD's intentional public disclosure of its attorney's legal opinion results in waiver of the attorney-client privilege and the work product immunity "as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Thus, when the ACRD, in lieu of simply stating the agency's conclusion that reasonable cause exists, provides that determination under the signature of one of its lawyers, who signs the document as "Chief Counsel," the ACRD has waived all attorney-client and work product privilege that it may have in the investigation of Reyes' complaint and the preparation of the reasonable cause decision itself.

There is a limit, however, to the waiver. It extends only so far as "to communications about the matter actually disclosed." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)). The Ninth Circuit has cautioned against finding a complete waiver of the attorney-client privilege by noting that "[t]he breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling." *Hernandez*, 604 F.3d at 1101. Thus, while the waiver here may extend to all aspects of the reasonable cause determination at issue in this case, the waiver does not extend to any communications regarding the ACRD's investigations into the separate charges brought by the intervening party that were not included in the reasonable cause determination by the ACRD.

New Federal Rule of Evidence 502(a), effective September 19, 2008, suggests that in evaluating the extent of waiver, the court limit the waiver to those communications or information that concern the same subject matter as the communication constituting the waiver:

> When the disclosure is made in a Federal Proceeding or to a Federal office or agency and waives the attorney-client privilege or work product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if: (1) the waiver is intentional, (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

Thus, the scope of the waiver is determined by the subject matter of the reasonable cause

- 12 -

determination itself. There is no doubt that the ACRD's waiver of the privilege in the reasonable cause determination is intentional. No one contests that the document signed by Pate is a public document.

Further, the communications or information that the ACRD seeks to protect concern the same subject matter as the reasonable cause determination. The reasonable cause determination is a five-page single-spaced document. On its first page it describes the Defendant Frito-Lay, Inc., its business, and its employment of the charging party. It further identifies the charging party and the factual allegations and legal assertions making up her charge. It then summarizes the Defendant's position in response to the charge, the Defendant's evidentiary allegations asserting neutral reasons for its employment action with respect to the charging party, and its denial of the charges made. The balance of the next three pages discusses the ACRD's investigation of the charge. In its investigation, the ACRD relied on the testimony of the charging party, and documents she provided them, as well as its evaluation of the documents it obtained from the Defendant. Further, the ACRD interviewed "several witnesses" including a former site expert trainer, two former female workers, and a former packaging machine operator for the Defendant. Based on this investigation, and its evaluation of the evidence and documents that it considered, the ACRD concludes that "it is more reasonable than not to believe that unlawful employment practices occurred." (Doc. 42, Ex. A).

Pate reviewed and approved the document, signing it in her capacity as Chief Counsel for the ACRD. The ACRD further acknowledges that she did so after attorney Hobart had made a similar evaluation. Further, attorneys Varela and Walker were involved "to some extent in reaching the ACRD's determination and/or in drafting" the reasonable cause determination. The ACRD has thus waived any attorney-client privilege it has in investigations undertaken, advice given, or communications made by Hobart, Varela and Walker applicable to "reaching the ACRD's determination" in this matter "and/or in drafting" the reasonable cause determination. Correspondingly, any attorney-client privilege or work product immunity in documents reflecting these communications or this advice are

1 similarly waived.

2 Nothing about the original intake form (PRIV00023) suggests that it is protected by the attorney-client privilege. The ACRD's description of the priority process that the intake officer follows indicates that the document reflects an evaluative procedure that is performed by a non-lawyer. The evaluation appears to be standard and administrative in nature. ACRD's general and unpersuasive assertion that it was requested in a general sense by Compliance Counsel does not suggest that Compliance Counsel asked for such documents in any legal capacity, or that it was a necessary prerequisite to the receipt of legal advice. The document is thus not protected by the attorney-client privilege. To the extent it might be considered subject to a privilege, that privilege has nonetheless been waived.

11 To the extent the ACRD requested Hobart's review of the reasonable cause determination in a document (PRIV00015), the privilege in that document has been waived. Similarly, any privilege or immunity in Hobart's handwritten notes based on her review of the investigation file, and any privilege or immunity in her revisions to the determination are also waived. (PRIV00013-14,16, 17-19). The State has in its files an unsigned draft of the reasonable cause determination that contains some of Pate's and Hobart's revisions to Thompson's draft. (PRIV00009-12). Any privilege in these documents is also waived.

18 On the date that the reasonable cause determination was issued, the ACRD transferred the file from its compliance section to its litigation division for conciliation or possible litigation. That transfer was reflected in the compliance division's Closing File form (PRIV00002) and the Request For Assistance form (PRIV00003). Both of those forms reflect that Hobart would be the attorney assigned to the file from the litigation section. The state claims that these forms constitute a request for a legal opinion and thus fall within the attorney-client privilege. A review of the documents, however, suggests that they reflect administrative action, but do not constitute a request for a legal opinion. The fact of the assignment of Hobart to the file does not meet the requirements for protection by the attorney-client privilege. To the extent it does, any such privilege has been waived. The ACRD's Motion for Protective Order is thus denied as it pertains to these documents.

Similarly, considering the extensive discussion of the investigation and ACRD's reliance on the investigation in making its reasonable cause determination, any otherwise existing attorney-client privilege in communications between Compliance Officer Thompson and attorneys which relate to her investigation of the charges in this matter has been waived. The ACRD has not only asserted that non-attorney compliance officers, like Thompson, conduct their pre- and post-litigation legal activity only with attorney guidance (Doc. 45 at 3), but has also heavily relied on the conclusions of that attorney-directed investigation in its reasonable cause determination. The ACRD has thus waived any privilege it may have had in the request for legal assistance made from Thompson, (PRIV00024), and the two copies of the response from Assistant Attorney General Sandra Kane. (PRIV00021-22; PRIV00025-26). To the extent Thompson made separate notes to herself for purposes of conducting her investigation (PRIV00020), there appears to be no privilege in this document at any rate. To the extent there may have been, it has been waived.

In fairness, these non-disclosed communications ought to be considered together with the reasonable cause determination. Plaintiffs essentially seek to use the attorney-client privilege as both a sword and a shield, an act that the Ninth Circuit has specifically cautioned against. *See e.g.*, *Chevron*, 974 F.2d at 1162. As is discussed above, there is no question that both the ACRD and the Intervenor have the right pursuant to Ninth Circuit law to have the reasonable cause determination admitted for its probative value in meeting their burden of proof as plaintiffs. That probative value is arguably enhanced because it contains the conclusions of the ACRD attorneys. The weight to be given the document is unavoidably affected by how the ACRD attorneys arrived at their conclusions. However, the ACRD cannot bolster its reasonable cause determination by having it issued by an attorney, and at the same time claim the attorney-client privilege in how it arrived at the conclusion. Thus, in fairness, the communications the agency received from its attorneys concerning the reasonable cause determination ought to be considered in conjunction with the reasonable cause determination to the extent that determination is to be admitted for the fact-finder's

- 15 -

consideration.[3]

As a result, to the extent that it concerns the investigation of Reyes' complaint and the preparation of the reasonable cause determination, the ACRD has waived any attorney-client or work product privilege it may have in any document, or to prevent the depositions of its employee attorneys. Therefore, to the extent the motion for protective order seeks to completely bar the five requested depositions in this matter, the motion is denied. Further, the ACRD has waived any privilege in the documents in which it claims privilege.

**IV.     Deposition of Hobart or any other ACRD Attorney**

The ACRD, citing *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986), asserts that because Hobart represents it in this litigation, she cannot be deposed except in circumstances in which: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. at 1327 (citations omitted). To the extent those requirements apply to this case, they are met.

Unlike the facts in *Shelton,* in this case the ACRD injected Hobart as a fact witness. It did so by waiving its attorney-client privilege in a document Hobart assisted in drafting and whose legal conclusions she evaluated. Because Hobart was one of those making an independent evaluation on behalf of the ACRD, and actually participating in the drafting of the document at issue, there is no other practical means to obtain the information as there was in *Shelton*. Further, because the adequacy of those conclusions are at issue, Hobart's evaluations are crucial to the preparation of Defendants' case. Thus, to the extent the *Shelton* rule applies, it has been satisfied. It provides the ACRD with no basis to resist the deposition

---

[3] Plaintiffs suggested at oral argument that they may waive their right to admit the reasonable cause determination into evidence. The waiver of the attorney-client privilege, however, results from the ACRD's public disclosure of its attorney's legal conclusions, not the admissibility of the reasonable cause determination into evidence. Nevertheless, should Plaintiffs waive their right to admit the reasonable cause determination, it could affect the extent to which discovery sought into matters in which ACRD has waived its attorney-client privilege is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

- 16 -

of Hobart, or any of the other attorneys who participated in the investigation or the drafting of the reasonable cause determination.

**IT IS THEREFORE ORDERED** denying the following Motions:

1. Motion for Protective Order (Doc. 33);

2. Motion for Protective Order Re: Deposition of Four Current and Former ACRD Attorneys (Doc. 46);

3. Motion for Protective Order Re: Deposition of ACRD Investigator (Doc. 47); and

4. Request for Leave to File Written Reply to Defendants' Responses DKT. Nos. 56 & 57 and Notice of Supplemental Authority (Doc. 71).

DATED this 7th day of March, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge